UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.R.M.J., <br><br> Petitioner, <br><br> v. <br><br> MINGA WOFFORD, et al., <br><br> Respondents. | No. 1:25-cv-01567-DC-SCR <br><br> ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER <br><br> (Doc. No. 2) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 2), which Petitioner concurrently filed with a petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will deny Petitioner's motion for a temporary restraining order.

**BACKGROUND**

**A.     Factual Background**

Petitioner is a citizen and national of Mexico. (Doc. No. 1 at ¶ 32.) Petitioner lived in the United States intermittently during the 1990s and 2000s. (*Id.*) On April 28, 2007, Petitioner applied for admission into the United States at the Otay Mesa Port of Entry. (Doc. No. 8-1 at 5.) To obtain admission, Petitioner presented his Mexican passport, which contained a "counterfeit Immigration form temporary I-551 (Legal Permanent Resident) ADIT stamp." (*Id.*) Due to

1   Petitioner's misrepresentation and lack of valid entry document, Petitioner was deemed

2   inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(i) and (a)(7)(A)(i)(I).[1] (*Id.*) Petitioner was

3   served a Form I-860 Notice and an Order of Expedited Removal. (Doc. No. 8-1 at ¶ 7.) Petitioner

4   was then removed to Mexico on that same day. (*Id.*; Doc. No. 1 at ¶ 43.)

5         On June 16, 2024, Petitioner encountered United States Border Patrol agents near San

6   Luis, Arizona, after crossing the border from Mexico. (Doc. Nos. 1 at ¶ 43; 8-1 at 8.) Border

7   Patrol temporarily detained Petitioner at a border holding facility in Yuma, Arizona. (Doc. Nos. 1

8   at ¶ 43; 8-1 at 9.) On June 17, 2024, United States Department of Homeland Security ("DHS")

9   reinstated Petitioner's previous 2007 removal order. (Doc. No. 8-1 at 12.) Petitioner signed the

10  "Notice of Intent/Decision to Reinstate Prior Order," and indicated that he did not wish to make a

11  statement contesting the determination. (*Id.*)

12        Petitioner was released from custody on June 18, 2024, subject to an Order of Supervision

13  ("OSUP") pursuant to 8 U.S.C. § 1231(a)(2)(A)(3), and with placement of an ankle monitor on

14  his foot. (Doc. Nos. 1 at ¶ 43; 8-1 at 14–17.) Petitioner was also enrolled in the Intensive

15  Supervision Appearance Program ("ISAP"), which imposes mandatory compliance requirements.

16  (Doc. Nos. 1 at ¶ 7; 8-1 at ¶ 10.)

17        On August 13, 2024, Petitioner attended his appointment at the San Jose Local

18  Immigration and Customs Enforcement ("ICE") Office. (Doc. No. 1 at ¶ 44.) ICE officers

19  removed Petitioner's ankle monitor and directed him to the ISAP office. (*Id.*) Petitioner was

20  informed of his supervision plan, which required that he install a monitoring application on his

21  personal cell phone for weekly reporting. (*Id.*) Petitioner does not own a phone, but he received

22  permission for his ISAP Officer to install the application on a relative's cell phone instead. (*Id.*)

23

---

24  [1] Specifically, 8 U.S.C. § 1182(a)(6)(C)(i) provides that "[a]ny alien who falsely represents, or
    has falsely represented, himself or herself to be a citizen of the United States for any purpose or
25  benefit under this chapter (including section 1324a of this title) or any other Federal or State law
    is inadmissible," and 8 U.S.C. § 1182(a)(7)(A)(i)(I) provides that "any immigrant at the time of
26  application for admission who is not in possession of a valid unexpired immigrant visa, reentry
    permit, border crossing identification card, or other valid entry document required . . .and a valid
27  unexpired passport . . . is inadmissible."

28

1    Petitioner indicates that on at least three occasions, he missed a scheduled virtual check-in or

2    submitted required documentation to his ISAP officer after the deadline. (*Id.* ¶¶ 46, 48.)

3        On November 3, 2025, Petitioner reported to the ISAP office for a check-in, where he was

4    detained. (Doc. Nos. 1 at ¶ 49; 8-1 at ¶ 11.) While detained at the ISAP office, Petitioner was

5    served with a "Notice of Revocation of Release," which outlined the reasons for the revocation,

6    including that Petitioner violated the conditions of his OSUP. (Doc. No. 8-1 at 19.) Petitioner

7    signed the Notice of Revocation of Release. (*Id.* at 19–20.) Petitioner alleges in his petition that

8    "he was instructed to sign a document. Officers reportedly assured him that the document was not

9    related to deportation, yet they still mandated his signature. He does not know what kind of

10   document he signed." (Doc. No. 1 at ¶ 50.) Petitioner was then transferred to the Mesa Verde ICE

11   Processing Center in Bakersfield, California, where he is currently detained. (*Id.* at ¶¶ 51, 54.) On

12   November 7, 2025, ICE conducted an informal interview with Petitioner "in order to afford [him]

13   an opportunity to respond to the reasons for revocation of his [] order of supervision," though he

14   did not provide any written or oral response during the interview. (Doc. No. 8-1 at 24.)

15       Petitioner has since claimed a fear of returning to Mexico. (Doc. No. 8 at 2.) Petitioner

16   was scheduled for a reasonable fear interview for November 20, 2025, though it is not known to

17   the court whether that interview occurred. (*Id.*)

18   **B.     Procedural Background**

19       On November 16, 2025, Petitioner filed a petition for writ of habeas corpus pursuant to

20   28 U.S.C. § 2241. (Doc. No. 1.) Also on November 16, 2025, Petitioner filed the pending motion

21   for a temporary restraining order. (Doc. No. 2.) Petitioner argues in both of those filings that ICE

22   failed to comply with its regulations governing the revocation of an order of supervision when it

23   re-detained him, and that the Due Process clause of the Fifth Amendment to the U.S. Constitution

24   requires that he be provided a hearing before a neutral decisionmaker prior to re-detention. (Doc.

25   Nos. 1, 2.) In his motion for a temporary restraining order, Petitioner seeks immediate release

26   from immigration detention and an order preventing his re-detainment unless and until he is

27   afforded a hearing before a neutral adjudicator to determine whether there is clear and convincing

28   evidence that he is a danger or a flight risk. (Doc. No. 2 at 2.) Respondents Minga Wofford,

1  Sergio Albarran, Todd M. Lyons, Kristi Noem, and Pam Bondi, (collectively, "Respondents"),
2  filed their opposition to Petitioner's motion on November 19, 2025, along with exhibits
3  concerning Petitioner's immigration record.[2] (Doc. No. 8.) Petitioner filed a reply thereto on
4  November 23, 2025. (Doc. No. 9.)

## LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20 (2008). A plaintiff seeking a preliminary injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for preliminary injunction]." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.Supp.3d 1177, 1185 (C.D. Cal. 2015).

/////

---

[2] In their opposition, Respondents move to strike and dismiss "all unlawfully named officials under § 2241." (Doc. No. 8 at 1 n.1.) Where an individual brings a "core habeas" petition challenging present physical confinement, the immediate custodian rule states that the proper respondent is the immediate custodian. *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024). Petitioner has properly named their immediate custodian, the Warden of the Mesa Verde ICE Processing Center, Minga Wofford. (Doc. No. 1 at ¶ 33.) However, if Respondents seek to dismiss the other Respondents from this action, they must do so in a properly noticed motion.

# ANALYSIS

**A.      Regulations Applicable to Petitioner's Removal Order**

       1.      <u>Reinstatement of Petitioner's Removal Order</u>

"The Immigration and Nationality Act (INA) provides for the expedited removal of an alien who was previously subject to a removal order but returned illegally to the United States." *Andrade-Garcia v. Lynch*, 828 F.3d 829, 831 (9th Cir. 2016) (citing 8 U.S.C. § 1231(a)(5)). The reinstatement of removal orders against aliens who are deemed to have illegally reentered the United States is governed by § 1231(a)(5), which states that

> [i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). Indeed, reinstatement of a prior removal order only requires that the petitioner is a noncitizen who was previously subject to a removal order and reentered the United States unlawfully. *Morales de Soto v. Lynch*, 824 F.3d 822, 825 (9th Cir. 2016) (quoting *Morales–Izquierdo v. Gonzales*, 486 F.3d 484, 495 (9th Cir. 2007) (en banc)).

    In most instances, immigration officers determine whether to reinstate a prior removal order "without a hearing before an immigration judge." *Morales de Soto*, 824 F.3d at 825 (citing *Morales–Izquierdo*, 486 F.3d at 487–88)). In making such a determination, an immigration officer must obtain the prior order of removal, positively identify the individual as the individual subject to the prior removal order, and determine whether the individual unlawfully reentered the United States. 8 C.F.R. § 241.8(a). When an immigration officer follows the steps set forth in those regulations (8 C.F.R. § 241.8(a)), "[t]he alien has no right to a hearing before an immigration judge." 8 C.F.R. § 241.8(a). Further, an immigration officer must provide notice of and an opportunity to contest the immigration officer's findings. 8 C.F.R. § 241.8(b).

    Here, Petitioner does not contest that the prior removal order was properly reinstated. It appears from the limited record before the court that the requirements of § 241.8(a) were met. The "Record of Deportable/Inadmissible Alien" is dated June 17, 2024, and includes a positive

identification of Petitioner. (Doc. No. 8-1 at 7.) It also includes a narrative from the Border Patrol Officer who encountered Petitioner. (*Id.* at 9.) That narrative includes that Petitioner stated he was a citizen and national of Mexico, did not have the necessary legal documents to enter, and that he "admitted to illegally crossing the international boundary." (*Id.*) The narrative also identifies that Petitioner was previously ordered removed on April 28, 2007. (*Id.*). Further, it appears Petitioner was provided with a notice of the reinstatement of the prior removal order and an opportunity to respond. Petitioner signed the Notice of Intent/Decision to Reinstate Prior Order, which indicates that Petitioner declined to make a statement contesting the determination. (*Id.* at 12.) Based on this record, the requirements of 8 C.F.R. § 241.8(a) and (b) were satisfied and Petitioner's prior removal order was properly reinstated.

    2.    <u>Petitioner's Release from Custody in June 2024</u>

Except in limited circumstances, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days ( . . . referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A).[3]

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Here, there is no suggestion by Respondents that Petitioner's removal order became final recently such that Petitioner's removal period is presently ongoing. Rather, the record suggests

---

[3] If a noncitizen expresses fear of returning to the country designated in the order or removal, that noncitizen "shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture. . . ." 8 C.F.R. § 241.8(e). "If the officer decides that the alien does have a reasonable fear of persecution or torture, the case is referred to an immigration judge . . . 'for full consideration of the request for withholding of removal only.'" *Ayala v. Sessions*, 855 F.3d 1012, 1015 (9th Cir. 2017) (quoting 8 C.F.R. § 208.31(e)). A noncitizen can also appeal the asylum officer's determination that the noncitizen has not established a reasonable fear of persecution or torture to an immigration judge. *Id*. at 1015–16 (citation omitted).

1   Petitioner's removal order was reinstated on June 16, 2024, more than a year ago. (Doc. No. 8-1
2   at 12.) Further, "[i]n general, [d]uring the removal period, the Attorney General shall detain the
3   alien." 8 U.S.C. § 1231(a)(2)(A). Where "an alien does not leave or is not removed within the
4   removal period, the alien, pending removal, shall be subject to supervision . . . ." 8 U.S.C.
5   1231(a)(3); *see also Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal.
6   Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is
7   therefore release on conditions, not detention."). Here, Petitioner was detained for only a few
8   days (not the full removal period) and was released on June 18, 2024, subject to OSUP conditions
9   and ISAP requirements. (Doc. Nos. 1 at ¶¶ 7, 43; 8-1 at 9; 8-1 at ¶ 10.) As a result, Petitioner is
10  no longer subject to detention under § 1231(a)(2). The court therefore considers whether
11  Petitioner's re-detention in November 2025 is lawful under other statutory or regulatory
12  provisions.

13  **B.      Lawfulness of Petitioner's Re-detention in November 2025**

14         "Noncitizens subject to a final removal order may be released pursuant to 8 C.F.R.
15  § 241.4(l) or 8 C.F.R. § 241.13." *Khamba v. Albarran*, No. 1:25-cv-01227 JLT SKO, 2025 WL
16  2959276, at *7 (E.D. Cal. Oct. 17, 2025) (citation omitted). These regulations also govern the
17  revocation of a noncitizen's release from custody. *See id.* Respondents invoked both statutes in
18  the Notice of Revocation of Release served on Petitioner on November 3, 2025.[4] (Doc. No. 8-1 at
19  19.) The following revocation procedure set forth in § 241.4 is of particular relevance here
20  because Respondents contend Petitioner violated the conditions of his release:

21          (l) Revocation of release—

22          (1) Violation of conditions of release. Any alien described in
            paragraph (a) or (b)(1) of this section who has been released under
23          an order of supervision or other conditions of release who violates

---

[4] Petitioner applies 8 C.F.R. § 241.4(l) in his motion, while Respondents cite to both regulations in their opposition. (*See* Doc. Nos. 2 at 13; 8 at 5.) While the court applies 8 C.F.R. § 241.4(l), it notes that the analysis under either provision would be the same or similar because 8 C.F.R. § 241.13(i)(3) contains identical language that a noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3); 8 C.F.R. § 241.4(l)(1).

7

> the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

8 C.F.R. § 241.4(l)(1).

On the record presently before the court, Petitioner has not shown that ICE failed to comply with the requirement to (1) inform Petitioner of the reasons for the revocation of his release upon revocation and (2) to afford Petitioner an informal interview and opportunity to respond to the reasons for revocation stated in the notification promptly after his return to custody. *See id.* The Notice of Revocation of Release is dated November 3, 2025, which is the date Petitioner states that he was re-detained. (Doc. Nos. 1 at ¶ 13; 8-1 at 19–20.) The Notice of Revocation of Release indicates that Petitioner was re-detained, at least in part, because he allegedly violated the conditions of his OSUP. (Doc. No. 8-1 at 19.) Indeed, the Notice of Revocation of Release contains dates and specific descriptions of three occasions on which Petitioner allegedly violated the conditions of his release.[5] (*Id.*); *Cf. Esmail v. Noem*, 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *5 (C.D. Cal. Sept. 12, 2025) (finding that a notice of revocation containing only generic statements and no factual allegations is insufficient to notify a petitioner of the reasons for the revocation of his release); *Bui v. Warden of Otay Mesa Det. Facility*, No. 25-cv-2111-JES-DEB, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23, 2025) (same). The Notice of Revocation of Release also includes a proof of personal service on Petitioner, which is signed and dated by an ICE officer. (Doc. No. 8-1 at 19–20.) It further includes Petitioner's own signature, which is dated November 3, 2025. (*Id.*)

Petitioner argues in his motion that while he did receive the Notice of Revocation of Release, he did "not know what kind of document he signed." (Doc. Nos. 1 at ¶ 14; 2 at 8.) In his

---

[5] Respondents allege that Petitioner violated the conditions of his release on at least six occasions, though only three of these instances are included in the formal Notice of Revocation of Release that was served on Petitioner. (Doc. No. 8-1 at ¶ 11, 19.)

8

1  reply, Petitioner further argues that the Notice is deficient because there is no certificate of
2  interpretation indicating that it was provided to him in the Spanish language. (Doc. No. 9 at 6.)
3  However, Petitioner does not allege in the petition that he did not understand the Notice of
4  Revocation of Release due to a language barrier, nor that he does not understand English. Other
5  allegations in Petitioner's petition suggest he did not encounter a language barrier with the ICE
6  officers. Specifically, with regard to the Notice, Petitioner alleges ICE officers "assured him that
7  the document was not related to deportation," yet Petitioner does not specify in what language
8  those assurances were given, nor that he understood those assurances because they were given in
9  the Spanish language. (Doc. Nos. 1 at ¶ 14; 2 at 8.)

10         Further, despite Petitioner's argument to the contrary, it appears an ICE agent conducted
11 an informal interview with Petitioner on November 7, 2025, four days after he was re-detained.
12 (Doc. No. 8-1 at 24.) The document memorializing the interview, titled "Alien Informal
13 Interview," is signed and dated by the interviewing ICE officer. (*Id.*) It indicates that Petitioner
14 did not provide an oral response, a written response, or any supporting documents to contest the
15 reasons for revocation. (*Id.*) Besides this document, the court has no other specific information
16 about what did or did not occur during Petitioner's interview, including what language it was
17 conducted in and how much time Petitioner was given to prepare. (*See* Doc. No. 9 at 7.) Based on
18 the limited record before the court, Petitioner has not shown that ICE failed to satisfy the notice
19 of revocation and informal interview requirement as provided for by 8 C.F.R. § 241.4(l)(1).
20 Therefore, Petitioner has not met his burden in demonstrating he is likely to succeed on the merits
21 of his claim that Respondents violated the applicable revocation regulations when Petitioner was
22 re-detained.

23         Petitioner further argues that in his circumstances, his current detention violates the Due
24 Process Clause because he was not provided a pre-deprivation hearing before a neutral
25 decisionmaker. (Doc. No. 2 at 13, 24.) Petitioner asserts that "due process mandates that he be
26 released from his unlawful custody and receive notice and a hearing before a neutral adjudicator
27 *before* any re-arrest or revocation of his custody release." (Doc. No. 2 at 16–17; 20). However,
28 Petitioner does not cite to any authority in which a court has held that—when complied with—the

9

1  procedural safeguards provided by either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13 are insufficient to
2  satisfy the requirements of due process. Rather, Petitioner relies on decisions where courts
3  concluded that a bond hearing, either before or after detention, was required in a different factual
4  and statutory context. *See, e.g., Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)
5  (finding pre-deprivation hearing required before re-detainment pursuant to 8 U.S.C. § 1226);
6  *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020)
7  (same); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *2 (N.D. Cal. Mar.
8  1, 2021) (same); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (finding that due
9  process requires petitioner to determine whether his detention is warranted pursuant to 8 U.S.C. §
10 1225); *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *14
11 (E.D. Cal. Aug. 28, 2025) (ordering petitioner be provided a bond hearing to justify reasons for
12 re-detention in the 8 U.S.C. § 1226 context).

13       But where a noncitizen is re-detained under either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13,
14 courts have declined to affirmatively impose a pre-deprivation hearing requirement, even where
15 DHS failed to follow its own procedures *See Khamba v. Albarran*, No. 1:25-cv-01227 JLT SKO,
16 2025 WL 2959276, at *7 (E.D. Cal. Oct. 17, 2025) (holding that "DHS's failure to follow its own
17 procedural regulations may constitute a due process violation," and ordering that Petitioner must
18 be provided only with a "post-deprivation" hearing in the event that he is re-detained); *Diaz v.*
19 *Wofford*, No. 1:25-cv-01079 JLT EPG, 2025 WL 2581575, at *10 (E.D. Cal. Sept. 5, 2025)
20 (permanently enjoining respondents from re-detaining petitioner "absent compliance with
21 constitutional protections, which include, at a minimum, strict compliance with the requirements
22 of 8 C.F.R. [§] 241.8 and the form of notice and opportunity to be heard prescribed in 8 C.F.R. §
23 241.4(l)"). Indeed, Petitioner did not cite to, and the court cannot find, any authority to support
24 the imposition of a pre-deprivation hearing where ICE complies with 8 C.F.R. § 241.4 or 8 C.F.R.
25 § 241.13. Accordingly, Petitioner has not demonstrated he is likely to succeed on the merits of his
26 due process claim.

27       Because Petitioner has not shown a likelihood of success on the merits of his claims, the
28 court need not address the other *Winter* factors and will deny Petitioner's motion for a temporary

1 | restraining order.

## CONCLUSION

For the reasons explained above:

1. Petitioner's motion for a temporary restraining order (Doc. No. 2) is DENIED; and

2. This matter is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: **November 26, 2025**

Dena Coggins
United States District Judge

11