UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

J.R. M.J.,

           Petitioner,

    v.

MINGA WOFFORD, et al.,

           Respondents.

No.  1:25-cv-01567-DC-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding through counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned pursuant to Local Rule 302 and 28 U.S.C. § 636(b)(1).  Currently pending before the Court is petitioner's § 2241 petition, which has been fully briefed by the parties.  (ECF Nos. 12-13.)

## I.    Factual and Procedural History

As described in the Court's November 26, 2025 order:

> Petitioner is a citizen and national of Mexico. (Doc. No. 1 at ¶ 32.) Petitioner lived in the United States intermittently during the 1990s and 2000s. (Id.) On April 28, 2007, Petitioner applied for admission into the United States at the Otay Mesa Port of Entry. (Doc. No. 8-1 at 5.) To obtain admission, Petitioner presented his Mexican passport, which contained a "counterfeit Immigration form temporary I-551 (Legal Permanent Resident) ADIT stamp." (Id.) Due to Petitioner's misrepresentation and lack of valid entry document, Petitioner was deemed inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(i) and (a)(7)(A)(i)(I).[] (Id.) Petitioner was served a Form I-860 Notice and an Order of Expedited Removal. (Doc. No. 8-1 at ¶ 7.) Petitioner was then removed to Mexico on that same day. (Id.; Doc. No. 1 at ¶ 43.)

1

> On June 16, 2024, Petitioner encountered United States Border Patrol agents near San Luis, Arizona, after crossing the border from Mexico. (Doc. Nos. 1 at ¶ 43; 8-1 at 8.) Border Patrol temporarily detained Petitioner at a border holding facility in Yuma, Arizona. (Doc. Nos. 1 at ¶ 43; 8-1 at 9.) On June 17, 2024, United States Department of Homeland Security ("DHS") reinstated Petitioner's previous 2007 removal order. (Doc. No. 8-1 at 12.) Petitioner signed the "Notice of Intent/Decision to Reinstate Prior Order," and indicated that he did not wish to make a statement contesting the determination. (Id.)
>
> Petitioner was released from custody on June 18, 2024, subject to an Order of Supervision ("OSUP") pursuant to 8 U.S.C. § 1231(a)(2)(A)(3), and with placement of an ankle monitor on his foot. (Doc. Nos. 1 at ¶ 43; 8-1 at 14–17.) Petitioner was also enrolled in the Intensive Supervision Appearance Program ("ISAP"), which imposes mandatory compliance requirements. (Doc. Nos. 1 at ¶ 7; 8-1 at ¶ 10.)
>
> On August 13, 2024, Petitioner attended his appointment at the San Jose Local Immigration and Customs Enforcement ("ICE") Office. (Doc. No. 1 at ¶ 44.) ICE officers removed Petitioner's ankle monitor and directed him to the ISAP office. (Id.) Petitioner was informed of his supervision plan, which required that he install a monitoring application on his personal cell phone for weekly reporting. (Id.) Petitioner does not own a phone, but he received permission for his ISAP Officer to install the application on a relative's cell phone instead. (Id.)
>
> Petitioner indicates that on at least three occasions, he missed a scheduled virtual check-in or submitted required documentation to his ISAP officer after the deadline. (Id. ¶¶ 46, 48.)
>
> On November 3, 2025, Petitioner reported to the ISAP office for a check-in, where he was detained. (Doc. Nos. 1 at ¶ 49; 8-1 at ¶ 11.) While detained at the ISAP office, Petitioner was served with a "Notice of Revocation of Release," which outlined the reasons for the revocation, including that Petitioner violated the conditions of his OSUP. (Doc. No. 8-1 at 19.) Petitioner signed the Notice of Revocation of Release. (Id. at 19–20.) Petitioner alleges in his petition that "he was instructed to sign a document. Officers reportedly assured him that the document was not related to deportation, yet they still mandated his signature. He does not know what kind of document he signed." (Doc. No. 1 at ¶ 50.) Petitioner was then transferred to the Mesa Verde ICE Processing Center in Bakersfield, California, where he is currently detained. (Id. at ¶¶ 51, 54.) On November 7, 2025, ICE conducted an informal interview with Petitioner "in order to afford [him] an opportunity to respond to the reasons for revocation of his [] order of supervision," though he did not provide any written or oral response during the interview. (Doc. No. 8-1 at 24.)

ECF No. 10 at 1-3.

On the same day that DHS redetained petitioner, it reinstated his 2007 order of removal.

(ECF No. 12-1 at 22.)  Petitioner's signature appears on the bottom of the Notice of

/////

2

Intent/Decision to Reinstate Prior Order of removal which is consistent with his statement in the § 2241 petition that he was instructed to sign a document while in custody.  (ECF No. 12-1 at 22.)

On November 25, 2025, an asylum officer determined that petitioner did not have a reasonable fear of being returned to Mexico.  (ECF No. 12-2 at ¶ 7.)  On appeal, an Immigration Judge ("IJ") sustained the finding that petitioner did not have a reasonable fear of persecution if returned to Mexico.  (ECF No. 12-2 at 2 ¶ 8.)  On December 11, 2025, the IJ ordered that petitioner's case be returned to DHS to effectuate removal based on the reinstated order of removal pursuant to 8 C.F.R. § 1208.31(g)(1).  (ECF No. 12-2 at 4-5.)

Petitioner filed the instant § 2241 petition on November 16, 2025 along with a motion for a temporary restraining order.  (ECF Nos. 1-2.)  Claims one and two are based on the procedural and substantive components of the Fifth Amendment's Due Process Clause.  (ECF No. 1 at 32-33.)  In claims three and four, petitioner challenges his redetention by asserting that ICE failed to comply with its own regulations governing the revocation of an order of supervision in violation of the Administrative Procedures Act and the Accardi Doctrine.[1]  (Id. at 33-37.)  By way of relief, petitioner requests immediate release from detention, as well as declaratory and injunctive relief preventing his redetention unless he is provided with a pre-deprivation hearing before a neutral adjudicator where the government has the burden of demonstrating by clear and convincing evidence that he is a danger or a flight risk.  (Id. at 36.)

The District Judge denied the TRO on November 26, 2025.  (ECF No. 10.)  First, the District Judge rejected the government's argument that petitioner was subject to detention pursuant to 8 U.S.C. § 1231(c) ("Removal of Aliens Arriving at Port of Entry") because his "removal order was reinstated on June 16, 2024, more than a year ago."  (Id. at 7.)  However, on the basis of the record at the TRO stage, "Petitioner has not shown that ICE failed to comply with the requirement to (1) inform Petitioner of the reasons for the revocation of his release… and (2) to afford Petitioner an informal interview and opportunity to respond to the reasons for

---

[1]  See United States ex rel. Accardi v. Shaughnessy, 15 347 U.S. 260 (stating that "[i]f petitioner can prove the allegation [that agency failed to follow its rules in a hearing] he should receive a new hearing").

3

revocation stated in the notification promptly after his return to custody." (Id. at 8.)  There was an insufficient factual basis to find that petitioner was likely to succeed on the merits of his claim that ICE violated its own regulations, particularly given that petitioner "does not allege in the petition that he did not understand the Notice of Revocation of Release due to a language barrier, nor that he does not understand English." (Id. at 9.)  Regarding his Due Process claims, the District Judge found no legal authority requiring a pre-deprivation hearing prior to redetention when ICE complies with the procedural safeguards of 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13.  (Id. at 10.)

After denying the TRO, the District Judge referred the case to the undersigned for further proceedings.  The undersigned set a briefing schedule and the parties filed briefs on the merits of the claims in the petition.

In their answer, respondents assert that petitioner is "subject to a final order of removal and is detained pursuant to discretionary detention authority under 8 U.S.C. § 1231(a)(6)[.]" (ECF No. 12 at 1.)  Additionally, "[r]espondents contend that the Court's [TRO] ruling as to the pure legal question concerning the process due when a[] noncitizen is detained pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13 is law of the case. … While there may be other mixed questions of law and fact addressed in the Court's denial, or issues that were not addressed at all, the Court's holding as to the process due when an individual is re-detained under the proper regulations is a question of law that the district court has ruled on." (Id. at 4.)  Concerning the merits of petitioner's due process challenge, respondents submit that petitioner's reliance on Morrisey v. Brewer, 408 U.S. 471 (1972), is misplaced because it addresses the revocation of criminal parole and not immigration supervision.  (Id. at 9.)  Finally, respondents contend that the Mathews v. Eldridge, 424 U.S. 319 (1976), test does not apply to due process claims raised by noncitizens and, even if it did, it does not entitle petitioner to relief.  (Id. at 11-12.)

Petitioner filed a traverse asserting that "(1) the alleged process that ICE afforded to J.R.M.J. does not comport with the regulations under C.F.R. § 241.4 and thus violates the Administrative Procedures Act ('APA'); and, (2) J.R.M.J. has a protected liberty interest under the U.S. Constitution." (ECF No. 13 at 7.)  Specifically, petitioner contends that "[w]hile ICE

4

may have provided technical notice to J.R.M.J. [about the revocation of his release], the informal interview process was procedurally deficient" because there is no evidence that it was translated into Spanish so that he could understand it and because he was constructively denied access to his immigration lawyer.  (Id. at 8-12 (citing J.L.R.P. v. Wofford, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *3 (E.D. Cal. Nov. 14, 2025).)  According to petitioner, the 90 day removal period has long since elapsed and his removal is not imminent since he has been granted a stay of removal by the Ninth Circuit Court of Appeals.  (Id. at 7.)  Moreover, it is the government's burden to show that there is a significant likelihood that the noncitizen may be removed at the time that his order of supervision is revoked based on that particular change of circumstances.  (Id. at 13-14.)

With respect to whether the Court's denial of the TRO constitutes law of the case, petitioner submits that "(1) the court has discretion to apply the doctrine; (2) exceptions to the doctrine apply here."  (ECF No. 13 at 7.)  Petitioner submits that substantially different evidence has been developed in the record since the TRO was denied.  (Id. at 21.)  Since that date, petitioner has filed a Petition for Review in the Ninth Circuit which has stayed his removal.  (Id.)  Additionally, "the due process requirements in this context involve mixed questions of law and fact that require more thorough examination of Petitioner's specific circumstances, not just abstract legal principles."  (Id. at 20.)  Since there is no evidence and respondents do not even suggest that petitioner is a flight risk or a danger to the community, the appropriate remedy in this case is petitioner's immediate release from immigration detention.  (Id. at 23-24.)

In a supplemental brief, respondents submit that petitioner's ongoing detention does not violate due process because his removal is imminent pending the Ninth Circuit's adjudication of his petition for review.  (ECF No. 15 at 2.)  Thus, according to respondents, there is no violation of the Supreme Court's decision in Zadvydas.  Respondents also contend that petitioner has received the process he is due under the relevant immigration regulations pertaining to the revocation of his supervision.  (Id. at 3.)  Respondents submitted supplemental evidence demonstrating that petitioner's custody status was reviewed on February 18-19, 2026 as required by 8 C.F.R. § 241.4(l)(3).  (ECF No. 15-1 at 3-4.)  "During that review, petitioner was

interviewed and given the opportunity to make written statements, which were made and considered." (ECF No. 15 at 3.)  ICE determined to maintain petitioner in custody, and provided petitioner with written notice of this decision.  (ECF No. 15-1 at 1–2.)

In petitioner's supplemental reply brief, he contends that "[t]he government did not satisfy their burden to show that removal is imminent under 8 C.F.R. § 241.13(i)(2) and overwhelming case law; and, (2) Petitioner has not received the requisite due process under 8 C.F.R. § 241.4 and the Fifth amendment of the constitution."  (ECF No. 16 at 2.)  Regarding ICE's most recent detention review, petitioner submits that "[w]hile the government conducted procedural reviews on the timeline required by 8 C.F.R. § 241.4, the notice and substance of these reviews was inadequate.  As a consequence, J.R.M.J. was not able to meaningfully participate in the proceeding as required by the statute.  He effectively had no notice the interview would take place until the day of the interview."  (ECF No. 16 at 7.)

Attached to petitioner's supplemental brief, are a declaration from petitioner in Spanish as well as its English translation, and a copy of the Ninth Circuit docket in petitioner's immigration appeal.  (ECF No. 16-2.)  Petitioner's declaration indicates that he was not given time to prepare for the November 7, 2025 informal interview regarding the revocation of his supervision, he did not understand that this was the process to challenge his redetention, nor did ICE notify his lawyer.  (ECF No. 16-1 at 1, ¶ 11.)  Similarly, petitioner was not provided with adequate notice or access to his counsel prior to ICE's detention review conducted in February 2026.  (ECF No. 16-1 at 2, ¶ 12.)  Petitioner makes it clear in his declaration that had he been provided with sufficient notice on either occasion, he would have adequately contested the reasons for his revocation. (Id.)  According to petitioner, "[p]rocedural compliance alone is insufficient when the substance of the review appears predetermined and fails to meaningfully consider factors favoring release." (ECF No. 16 at 7.)  Petitioner additionally indicates that briefing will not be complete in his appeal in the Ninth Circuit until April 22, 2026.  (ECF No. 16-2 at 4.)  Petitioner's counsel submits that "[t]he Ninth Circuit review could take months, making removal not 'reasonably foreseeable.'"  (ECF No. 16 at 4.)

/////

6

## II.    Legal Standards

### A.  Jurisdictional Standards

A writ of habeas corpus is "available to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A court may grant a writ of habeas corpus to a petitioner who demonstrates that his or her custody violates the U.S. Constitution or federal law. 28 U.S.C. § 2241(c)(3).  In this case, petitioner contends that he is being detained in violation of both the Constitution and federal immigration law.  Therefore, this court has jurisdiction to review these claims for relief.

### B.  Constitutional Standards

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  This provision "protects individuals against two types of government action:  violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).  Freedom from imprisonment or physical restraint is a "fundamental" right at the "core of the liberty protected by the Due Process Clause." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).  As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454,

7

460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies.  See Rodriguez Diaz, 53 F.4th at 1206-07.  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others."  Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**C. Regulations Governing Revocation of Supervision**

When a non-citizen, subject to a final or reinstated order of removal, is released, DHS must comply with 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13 when seeking to revoke such supervision.  See Diaz v. Wofford, No. 1:25-cv-01079-JLT-EPG, 2025 WL 2581575, at * 4 (E.D. Cal. Sept. 5, 2025).  After a final order of removal, § 241.4(l) outlines the procedures governing the revocation of a noncitizen's supervised release based on a violation of the conditions of release.  It provides that:

> Any [noncitizen] described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such [noncitizen] who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole. The [noncitizen] will be afforded an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification.
>
> Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The [noncitizen] violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal

8

proceedings against a[] [noncitizen]; or

(iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(1), (2).

### III.  Analysis

#### A.  Detention Authority

At the outset, the undersigned finds it necessary to address the change to petitioner's detention authority that has occurred since the denial of the TRO.  On December 12, 2025, petitioner filed a petition for review of his removal order with the Ninth Circuit Court of Appeal.  ECF No. 16-2.  On that same date, the Ninth Circuit issued a temporary stay or removal, which remains in effect.  Under Ninth Circuit precedent, the stay of removal shifts the detention authority from 8 U.S.C. § 1231(a) to § 1226(a).  See Prieto-Romero v. Clark, 534 F.3d 1053, 1059 (9th Cir. 2008) (emphasizing that "[t]he statute makes clear that when a court of appeals issues a stay of removal pending its decision on a[] [non-citizen]'s petition for review of his removal order, the removal period begins only after the court denies the petition and withdraws the stay of removal").[2]  Petitioner's current detention under § 1226(a) means that he is entitled to a bond hearing before an IJ.  See 8 C.F.R. §§ 236.1, 1236.1, 1003.19.  However, as explained below, the undersigned believes that petitioner is entitled to additional relief under the Due Process Clause of the Fifth Amendment.

#### B.  Law of the Case

As to petitioner's due process challenge to his redetention without a pre-deprivation hearing, petitioner submits that "the district court's TRO ruling should not be considered binding

---

[2] Prieto-Romero concerned a noncitizen whose detention was initially governed by 8 U.S.C. § 1226(a) and who had petitioned for review of an administratively final order of removal and obtained a stay of removal from the Ninth Circuit.  See 534 F.3d at 1058.  By contrast, petitioner's detention here was initially governed by § 1231(a) before his judicial stay of removal. The undersigned is not aware of higher court decisions addressing the detention authority in this precise circumstance.  But see Johnson v. Guzman-Chavez, 594 U.S. 523 (2021) (holding that § 1231(a) governs detention during post-reinstatement withholding of removal proceedings before an IJ).  Accordingly, the undersigned applies the logic of Prieto-Romero to find that the authority for petitioner's detention has now shifted to § 1226(a).

law of the case here… [because it] was made on a limited record in an emergency posture without full briefing."  ECF No. 13 at 20.

Having reviewed the briefs on the merits of the § 2241 petition as well as the supplemental briefs on specific factual and procedural questions raised in this case, the undersigned concludes that the District Judge's TRO ruling does not constitute the law of the case as to petitioner's procedural due process claim.  Both parties agree that the general rule is that "injunctions are not binding at trial on the merits, and do not constitute the law of the case." Chinatown Neihborhood Ass'n v. Harris, 33 F. Supp. 3d 1085, 1094 (N.D. Cal. 2014), aff'd, 794 F.3d 1136 (9th Cir. 2015) (quotations and citations omitted).  Even if the general rule did not apply in this case, the factual record that was developed after the TRO ruling constitutes an exception to the law of the case doctrine based on the substantially different evidence that has subsequently been deduced.  See Gonzalez v. Arizona, 677 F.3d 383, 389-90, n.4 (9th Cir. 2012), aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc., 570 U.S. 1 (2013).

There have been two notable developments in the factual record in this case that support this conclusion.  First, petitioner has filed a petition for review and obtained a stay of removal from the Ninth Circuit Court of Appeals.  Accordingly, there is no longer a clear timeframe for petitioner's removal. Id. at 21.  He faces the real prospect of many months of further detention before his petition for review is resolved.  Second, and equally important, are developments in the record concerning the administrative review of petitioner's redetention by ICE.  Petitioner's declaration describes the circumstances of the administrative review of the revocation of his supervision, including that he "speak[s] Spanish and understand[s] very little English," that he did not understand the content of the document he signed on November 3, 2025 when ICE arrested him, and that he was not given adequate notice to prepare for the November 7, 2025 interview by ICE.  ECF No. 16-1.  Moreover, the record demonstrates that ICE has repeatedly failed to serve petitioner's counsel with documents concerning the administrative review of petitioner's detention, despite counsel's unrebutted representation that she has a G-28 form on file with

10

DHS.[3]  ECF No. 15 at 3 (box for service on "attorney of record" not checked), ECF No. 8-1 at 20 (same).  As explained below, these developments are relevant to the procedural due process analysis.

Moreover, the District Judge denied the TRO in part based on petitioner's failure to identify authority for a pre-deprivation hearing is similar circumstances.  But petitioner has now identified several cases requiring such a pre-deprivation hearing when ICE seeks to revoke release after entry of a final order of removal.  See ECF No. 16 at 4-6.  Based on these developments, the undersigned proceeds to the merits of petitioner's § 2241 application unrestricted by the District Judge's prior ruling denying petitioner a TRO.

**C.  Merits**

Turning first to petitioner's procedural due process challenge in claim one, petitioner argues that his 2024 release from custody and his ties to his family and community provide him with a protected liberty interest that required a pre-deprivation hearing in this case.  ECF No. 1 at 21 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963 (N.D. Cal. 2019).  Absent a material change in circumstances, he had a reasonable expectation of being able to continue working and supporting his family in the United States without being subject to rearrest during the pendency of his removal proceedings.  To determine whether an individual on conditional release has a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  The Supreme Court emphasized in Morrissey that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  Morrissey, 408 U.S. 471, 482 (1972).  The revocation of parole unquestionably "inflicts a grievous loss on the parolee and often

---

[3] "Form G–28" is a "Notice of Entry of Appearance as Attorney or Representative," which serves as the administrative record for immigration authorities of the identity and contact information of counsel.  Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 566 (9th Cir. 1990).

others." Id. (internal quotations omitted).  Based on this analysis, the Supreme Court determined that the parolee had a protected liberty interest.  Id. at 482; see also Gagnon v. Scarpelli, 411 U.S. 778, 781-83 (1973) (holding that individuals released on felony probation have a protected liberty interest requiring pre-deprivation process).

Petitioner's expectations while he was on release in the community for over a year are similar to those of the parolee in Morrissey.  He lived with his family, worked multiple jobs to support them, has no criminal convictions, was waiting on a credible fear interview with an asylum officer to move his immigration case forward, and formed "enduring attachments of normal life," Morrissey, 408 U.S. at 482; ECF No. 16-1 at 1 (Decl. of J.R.M.J.)  For these reasons, the undersigned agrees that petitioner has a protected liberty interest.  See J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589 (E.D. Cal. Nov. 14, 2025).

Having determined that petitioner has a constitutionally protected liberty interest in remaining on supervised release, the only remaining question is what procedures are necessary to protect that liberty interest.  Petitioner submits that he was entitled to a pre-deprivation hearing before a neutral adjudicator before he was redetained by ICE.  Having not received any such pre-deprivation hearing, petitioner contends that, at this point, he is entitled to be released.  ECF No. 1 at 26 (citing Lynch v. Baxley, 744 F.2d 1452 (11th Cir. 1984) (holding that individuals awaiting involuntary civil commitment proceedings may not constitutionally be held in jail pending the determination as to whether they can ultimately be recommitted).  The Court applies the Mathews v. Eldridge, 424 U.S. 319 (1976), framework here and concludes that a pre-deprivation bond hearing is necessary, at which bond hearing respondent would bear the burden demonstrating continued detention is warranted.  See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention).

Private Interest:  The first factor tilts in petitioner's favor.  "[T]he private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.' That is beyond dispute."  Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).  Petitioner was at liberty for

12

over a year before being redetained in this case.  During that time period, he maintained steady employment in order to support his wife and three children.  ECF No. 1 at 4; ECF No. 1-5 (letters of community support).  Therefore, this factor favors a finding that petitioner's private interest has been affected by his detention.

Risk of Erroneous Deprivation:  The risk of erroneous deprivation also weighs in petitioner's favor.  As a general matter, the risk of an erroneous deprivation of liberty can be decreased where a neutral decision maker, rather than ICE alone, makes custody determinations.  See Diouf v. Napolitano, 634 F.3d 1081, 1091-92 (9th Cir. 2011), abrogated on other grounds.  That is particularly true here.  There is a dispute between the parties as to whether petitioner violated any of the terms of his supervision.  See ECF No. 1 at 3 (noting that petitioner used his sister's cell phone for weekly reporting and "complied with the requirements of the ISAP program and his ICE's [sic] order of supervision"); ECF No 8-1 at 3 (identifying six alleged violations of the conditions of supervision).  In this circumstance, a pre-deprivation hearing before a neutral decisionmaker would have significant value.  The decision maker could determine whether petitioner did in fact violate conditions of release.  Even more importantly, the decision maker could determine whether any such violations are material to petitioner's danger or risk of flight.  Needless to say, certain technical violations might have no bearing on petitioner's danger or risk of flight.[4]

Moreover, there is significant value to a pre-deprivation hearing in the circumstances of this case, where petitioner has raised legitimate concerns about whether the administrative review process under 8 C.F.R. § 241.4 was fair and meaningful.  Even in the best of circumstances, that process "is essentially no more than a request to ICE's arresting agents or their supervisors at headquarters to reconsider the agency's unilateral detention decision."  Guillermo M. R. v. Kaiser, 791 F.Supp.3d 1021, 1034 (N.D. CA 2025) (ordering a pre-deprivation hearing before an IJ prior to redetention under § 1231(a)).  Here, petitioner claims that he was unable to understand

---

[4] For example, two of the listed violations are "missed biometric check-in," though it appears petitioner otherwise had a perfect record on such virtual weekly check-ins over more than a year of supervision.

that process because of a lack of translation.  Despite petitioner's counsel having a G-28 on file, ICE failed to notify petitioner's counsel of that process.  As Petitioner states, "Had I been provided with adequate notice and the opportunity to present my case, I would have contested the reasons for the revocation[.]"  ECF NO. 16-1 at 1.  "The risk of arbitrary or erroneous deprivation in these circumstances is undeniably stark."  Guillermo M. R., 791 F. Supp. 3d at 1034.  Thus, the second Mathews factor also favors petitioner.

Governmental Interest:  Finally, although the government has a strong interest in enforcing immigration regulations, the effort and cost required to provide petitioner with procedural safeguards are minimal.  See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  Hernandez, 872 F.3d at 994; see also R.D.T.M., 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).  "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."  Ortega, 415 F. Supp. 3d at 970.  Moreover, the government's interest in holding a detention hearing only *after* detaining petitioner is diminished where there is no allegation that petitioner absconded or engaged in any dangerous conduct.

As petitioner points out, numerous judges have ordered a pre-deprivation hearing under similar circumstances.  See J.L.R.P., 2025 WL 3190589, at *9-10; Guillermo M. R., 791 F.Supp.3d at 1038; Huang v. Albarran, No. 1:25-cv-01308-JLT-EPG, 2026 WL 279888 (E.D. Cal. Feb. 3, 2026) (granting motion to reconsider and motion for a preliminary injunction finding that petitioner is likely to succeed on the merits of a due process challenge to his redetention without a pre-deprivation hearing after being released on OSUP); Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, *4-6 (N.D. Cal. Aug. 21, 2025) (granting preliminary injunction based on petitioner's likelihood of success on due process claim that he was entitled to

14

a pre-deprivation hearing before an immigration judge prior to his redetention).  For all these reasons, the undersigned finds that petitioner should have been provided a pre-deprivation hearing before he was redetained under the Mathews factors.[5]  Petitioner's redetention absent such a hearing violated his right to procedural due process as alleged in count one of his habeas petition.[6]

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Petitioner's habeas corpus application (ECF No. 1) be granted as to claim one.

2.  Petitioner be ordered to be released immediately from the respondents' custody with the same conditions that he was subject to prior to his redetention on November 3, 2025.

3.  At the time of release, respondents be required to return all of petitioner's documents and possessions.

4.  If the government seeks to redetain petitioner, it must provide no less than seven (7) days of notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter where respondents would bear the burden by clear and convincing evidence of demonstrating that petitioner presents a danger or risk of flight.

5. Respondents be further directed to file a notice certifying compliance with any order entered by this Court.

6. The Clerk of Court be directed to enter judgment in favor of petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v.

---

[5] The undersigned follows J.L.R.P., 2025 WL 3190589, at *10, in recommending that respondents bear the burden of showing petitioner's danger or risk of flight by clear and convincing evidence.

[6] Having found a due process violation, the undersigned finds it unnecessary to address the remaining claims in petitioner's § 2241 application in the interests of judicial economy.

15

Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 2, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

16