UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

J.R.M.J.,

Petitioner,

v.

MINGA WOFFORD, et al.,

Respondents.

No. 1:25-cv-01567-DC-SCR

ORDER ADOPTING IN PART FINDINGS AND RECOMMENDATIONS, GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS, AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

(Doc. Nos. 1, 17, 23)

Petitioner, an immigration detainee proceeding through counsel, filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a motion for a temporary restraining order on November 16, 2025. (Doc. Nos. 1, 2.) On November 26, 2025, the court issued an order denying Petitioner's motion for a temporary restraining order and referring the petition to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On March 2, 2026, the magistrate judge filed findings and recommendations herein which were served on all parties and contained notice that any objections to the findings and recommendations were to be filed within seven days. (Doc. No. 17.) On March 16, 2026, Respondents timely[1] filed objections to the findings and recommendations. (Doc. No. 20.) On

---

[1] Respondents requested and were granted a seven-day extension to their objection deadline. (Doc. Nos. 18, 19.)

1

June 24, 2026, Petitioner filed a second motion for a temporary restraining order. (Doc. No. 23.) For the reasons explained below, the court will adopt in part the findings and recommendations, grant in part Petitioner's petition for writ of habeas corpus, and deny Petitioner's motion for temporary restraining order as having been rendered moot by this order.

**BACKGROUND**

The court detailed the factual background relating to Petitioner's immigration and detention history in the order denying Petitioner's motion for a temporary restraining order and hereby incorporates that factual background into this order. (*See* Doc. No. 10 at 1–3.)

Petitioner filed the pending petition for writ of habeas corpus challenging his continuing immigration detention on November 16, 2025. (Doc. No. 1.) Petitioner argued that his detention without an individualized bond hearing was unlawful as: (1) violating Petitioner's right to procedural due process; (2) violating Petitioner's right to substantive due process; (3) violating the Administrative Procedure Act due to Respondents' alleged violation of the Immigration and Nationality Act ("INA"); and (4) violating the *Accardi* Doctrine[2] due to Respondents' alleged violation of their own regulations. (*Id.* at 32–35.) On that same day, Petitioner filed a motion for a temporary restraining order, in which he argued that his November 3, 2025 re-detention by immigration authorities violated his constitutional right to due process because Petitioner "has no criminal record and [] is diligently pursuing his immigration case" such that he "is neither a danger nor a flight risk." (Doc. No. 2 at 12.) Petitioner contended that there were "[n]o material changes in circumstances" from Petitioner's previous release from immigration detention on an Order of Supervision (Doc. No. 2-4) that could justify his re-detention. (*Id.*) On November 19, 2025, Respondents filed their opposition to Petitioner's motion for a temporary restraining order contending that Petitioner's "release was revoked pursuant to changed circumstances." (Doc. No. 8 at 1.) Specifically, Respondents alleged that Petitioner was re-detained due to his "repeated violations of the Intensive Supervision Appearance Program" ("ISAP"), which included

---

[2] *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) ("If petitioner can prove the allegation [that the subject agency failed to follow its rules in a hearing] he should receive a new hearing.").

violations for failure to check in, missed office visits, and for tampering with his ankle monitor. (*Id.* at 2.) Respondents further argued that Petitioner was "properly re-detained in accordance with the process required by statute and regulation in" cases where the noncitizen is subject to a final removal order and is re-detained following a previous release. (*Id.* at 1–2.) Finally, Respondents argued that they complied with all protections to which Petitioner is entitled under the Constitution and the Immigration and Nationality Act ("INA") and its implementing regulations. (*Id.* at 8–9.)

On November 26, 2025, this court issued an order denying Petitioner's motion for a temporary restraining order. (Doc. No. 10.) The court found that Petitioner's previous removal order was reinstated pursuant to 8 U.S.C. § 1231(a)(5), that Petitioner was re-detained on that reinstated removal order pursuant to 8 C.F.R. § 241.4(l), and that Respondents complied with that regulation in revoking Petitioner's release due to his alleged ISAP violations. (Doc. No. 10 at 5–10.) Specifically, the court found that Respondents informed Petitioner of the reasons for the revocation of his release upon revocation and afforded Petitioner an informal interview and opportunity to respond to the purported reasons for revocation. (*Id.* at 8); *see* 8 C.F.R. § 241.4(l)(1) (stating that a noncitizen who "has been released under an order of supervision" and who "violates the conditions of release may be returned to custody" but requiring that "[u]pon revocation, the [noncitizen] will be notified of the reasons for revocation" and "will be afforded an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."). As to Petitioner's constitutional arguments, the court noted that "Petitioner [did] not cite to any authority in which a court has held that . . . the procedural safeguards provided by . . . 8 C.F.R. § 241.4 . . . are insufficient to satisfy the requirements of due process." (Doc. No. 10 at 9–10.) The court referred Petitioner's matter to the assigned magistrate judge for resolution on the merits of Petitioner's petition.

On March 2, 2026, following additional briefing by the parties (*see* Doc. Nos. 12, 13, 15, 16), the magistrate judge issued findings and recommendations recommending that the court grant Petitioner's habeas petition and immediately release Petitioner from Respondents' custody.

3

(Doc. No. 17.) The magistrate judge emphasized that on December 12, 2025, the Ninth Circuit Court of Appeal issued a temporary stay of removal pending resolution of Petitioner's petition for review of his removal order and found that under "Ninth Circuit precedent, the stay of removal shifts the detention authority from 8 U.S.C. § 1231(a) to § 1226(a)." (*Id.* at 9) (citing *Prieto Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008)). The magistrate judge then found that Petitioner's detention under § 1226(a) entitled him to a bond hearing before an immigration judge, which he had not received. (*Id.*) Next, the magistrate judge, employing the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), found that Petitioner maintained a protected liberty interest in his continued release on ISAP, that the process afforded to Petitioner under 8 C.F.R. § 241.4 was insufficient to protect that liberty interest because Respondents did not notify Petitioner's counsel of his informal interview and because Petitioner, a native Spanish speaker, was not able to understand the proceedings, and that providing Petitioner with a pre-deprivation bond hearing would not substantially interfere with the government's strong interest in enforcing immigration regulations. (Doc. No. 17 at 13–14.)

On March 16, 2026, Respondents filed objections to the finding and recommendations. (Doc. No. 20.) Respondents argue that the magistrate judge improperly shifted detention authority away from 8 U.S.C. § 1231(a)(6) to 8 U.S.C. § 1226(a) because, in *Prieto Romero*, the Ninth Circuit stayed the petitioner's removal to determine whether the petitioner was removable (i.e., a challenge to the final removal order itself), whereas here the Ninth Circuit stayed Petitioner's removal to determine whether Petitioner is entitled to withholding of removal to Mexico, which does not affect the validity or finality of the removal order. (*Id.* at 3–4.) Respondents further argue that the magistrate judge improperly found that Respondents' compliance with 8 C.F.R. § 241.4 did not satisfy the mandates of constitutional due process, and that the magistrate judge relied on cases where the court ordered a pre-deprivation bond hearing before a noncitizen with a final removal order could be re-detained precisely because the government failed to comply with § 241.4 in those cases. (*Id.* at 4–7.)

On March 18, 2026, Petitioner filed a response to Respondents' objections in which he argues that the magistrate judge correctly identified Petitioner's detention authority as under 8

4

U.S.C. § 1226(a) and correctly found that due process mandates that Petitioner be provided a pre-deprivation bond hearing, and that immediate release is the appropriate remedy for Respondents' failure to provide a pre-deprivation bond hearing. (Doc. No. 21.)

On June 3, 2026, Petitioner filed a supplemental brief in which he emphasizes that his detention has now exceeded six-months, the period of time the Supreme Court identified as presumptively reasonable to execute a removal order in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

On June 24, 2026, Petitioner filed the pending, second motion for a temporary restraining order seeking his release for the same reasons asserted in his previous briefing. (Doc. No. 23.) On June 25, 2026, Respondents filed an opposition to Petitioner's motion for a temporary restraining order. (Doc. No. 25.) On June 29, 2026, Petitioner filed a reply. (Doc. No. 26.)

**LEGAL STANDARD**

Any party may object to a magistrate judge's case dispositive findings and recommendations. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Local Rule 303. The district court must make a *de novo* determination of those portions of the magistrate's findings to which an objection is made and may accept, reject, or modify, in whole or in part, the findings and recommendation made by the magistrate. *Id. De novo* review means the court must consider the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered. *Ness v. Commissioner*, 954 F.2d 1495, 1497 (9th Cir. 1992). Thus, although the district court need not hold a *de novo* hearing, the court's obligation is to arrive at its own independent conclusion about those portions of the magistrate's findings or recommendation to which objections are made. *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).

**DISCUSSION**

Respondents object to two portions of the magistrate judge's findings and recommendations: (1) that the controlling detention statute shifted from 8 U.S.C. § 1231(a)(6) to 8 U.S.C. § 1226(a) upon the Ninth Circuit's stay of Petitioner's removal, and (2) that the procedural protections provided in 8 C.F.R. § 241.4 were insufficient to satisfy Petitioner's right to due process.

/////

5

### A.    Statutory Authority for Detention

The parties agree that upon his arrest, Petitioner was initially detained pursuant to 8 U.S.C. § 1231(a)(6). (*See* Doc. Nos. 1 at ¶ 58; 12 at 11 n.3.) That statute applies to all noncitizens who have been "ordered removed" and requires that the government "remove the [noncitizen] from the United States within a period of 90 days," commonly referred to as the removal period. 8 U.S.C. § 1231(a)(1)(A). The removal period begins, as relevant here, upon the latter of: (1) the date the order of removal becomes administratively final, or (2) where the removal order is judicially reviewed and the reviewing court orders a stay of removal, the date of the court's final order. *Id.* § 1231(a)(1)(B)(i)–(ii). Detention is mandatory during the removal period. *Id.* § 1231(a)(2)(A). A noncitizen "may be detained beyond the removal period" if they are inadmissible under 8 U.S.C. §§ 1182, 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4), or have "been determined by the [government] to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). Here, Petitioner was found inadmissible and ordered removed from the United States under 8 U.S.C. §§ 1182(a)(6)(C)(i) and 1182(a)(7)(A)(i)(I) on April 28, 2007. (Doc No. 8-1 at 5.) That removal order was reinstated against Petitioner on June 16, 2024. (*Id.* at 12.) Accordingly, as the parties agree, upon his re-detention Petitioner was subject to discretionary detention under 8 U.S.C. § 1231(a)(6).

However, in the findings and recommendations the magistrate judge found that upon the Ninth Circuit Court of Appeal's order issued on December 12, 2025 staying Petitioner's removal, the statute governing Petitioner's detention shifted from 8 U.S.C. § 1231(a) to 8 U.S.C. § 1226(a). (Doc. No. 17 at 9) (citing *Prieto-Romero v. Clark*, 534 F.3d 1053 (2008)). Under 8 U.S.C. § 1226(a), a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States" or the government "may release the [noncitizen] on" bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2). A noncitizen detained under § 1226(a) is statutorily entitled to a bond hearing before an immigration judge. *See* C.F.R. §§ 236.1, 1236.1, 1003.19. Accordingly, the magistrate judge found that, because Petitioner's detention authority shifted from § 1231(a) to § 1226(a), he is entitled to a bond hearing. (Doc. No. 17 at 9.)

But as Respondents argue in their objections, the court in *Prieto-Romero* considered whether a noncitizen was detained under § 1226(a) or § 1231(a) pending his timely appeal of the lawfulness of his final order of removal. (Doc. No. 20 at 3.) Here, Petitioner does not argue that his reinstated order of removal is improper. Indeed, because Petitioner's order of removal was reinstated in June 2024, Petitioner's deadline to seek review of that removal order has long since expired. *See Vega-Anguiano v. Barr*, 982 F.3d 542, 545 (2019) ("[I]t has been widely and appropriately assumed that § 1252(b)(1) establishes the [30-day] time limit for seeking review of reinstatement orders. Today, we hold rather than merely assume that this is, in fact, the law.") (internal citation omitted). Rather, Petitioner argues that he has a credible fear of removal to Mexico such that his removal cannot be executed to that country. (*See* Doc. No. 1 at ¶ 16.) In his appeal to the Ninth Circuit, Petitioner is challenging the decision by the Board of Immigration Appeals upholding the immigration judge's order denying withholding of removal based on a finding that Petitioner lacks a credible fear of returning to Mexico. (*See* Doc. No. 21 at 3.)

Further, the court in *Prieto-Romero* repeatedly emphasized that the petitioner was initially detained under § 1226(a), and that, because "§1231(a) authorizes detention only during the removal period and beyond the removal period, it clearly does not provide any authority *before* the removal period." *Prieto-Romero*, 534 F.3d at 1060. Here, as the parties agree, when Petitioner was initially detained, his detention was governed by § 1231(a). Thus, unlike in *Prieto-Romero*, the removal period had already begun upon Petitioner's present detention, making the logic of *Prieto-Romero* inapplicable. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021) (discussing noncitizens in withholding-only proceedings who were not subject to stays of removal pending appeal and concluding "that § 1231, not § 1226, governs the detention of aliens subject to reinstated orders of removal, meaning those aliens are not entitled to a bond hearing while they pursue withholding of removal").

Accordingly, the court will decline to adopt the magistrate judge's finding that Petitioner's detention authority had shifted to § 1226(a) and entitled him to a bond hearing. Instead, the court finds that Petitioner continues to be detained under § 1231(a) pending resolution of his withholding-only appeal and that he is not entitled to a bond hearing under that statute. This

finding does not end the analysis, however, because the magistrate judge additionally found that Petitioner's continued detention without a bond hearing deprives him of his constitutional right to due process.

**B.      Due Process**

Petitioner challenges his continuing detention without a bond hearing as violating his rights under the INA and the Constitution. (Doc. No. 1.) In the magistrate judge's findings and recommendations, the magistrate judge found that Petitioner maintained a protected liberty interest in his continued release. (Doc. No. 17 at 11–12.) Respondents do not object to this finding in their objections, and the court agrees that the analysis is sound. Accordingly, the court will adopt the magistrate judge's finding that Petitioner maintained a protected liberty interest in his continued release from immigration detention.

Next, the magistrate judge employed the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to determine what process Petitioner was entitled to before his protected liberty interest in his continued release could be revoked.[3]

First, as to private interest, the magistrate judge determined that this interest tilts in Petitioner's favor because "freedom from imprisonment is at the core of the liberty protected by the Due Process Clause. That is beyond dispute." (Doc. No. 17 at 12) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (internal citation omitted). Further, as Petitioner indicates in his second motion for a temporary restraining order, Petitioner has now been in immigration detention for more than six months, the period of time the Supreme Court held to be presumptively reasonable and therefore constitutional in *Zadvydas v. Davis,* 533 U.S. 678 (2001). (Doc. No. 23 at 9.) This extended period of detention does not, however, mandate Petitioner's release merely upon a finding that his removal is not reasonably foreseeable because his appeal is prolonging his removal—there is no evidence before the court that the government would not otherwise be able to expeditiously remove Petitioner to Mexico. *See Prieto Romero*, 534 F.3d at

---

[3] This court has also utilized the *Mathews* framework to determine the constitutionality of ongoing immigration detention. *See, e.g., Altin v. Chestnut*, No. 1:26-cv-00792-DC-CSK, 2026 WL 309563, at *6 (E.D. Cal. Feb. 5, 2026).

8

1062 (stating that unlike the petitioners in *Zadvydas*, the petitioner "face[d] a significant likelihood of removal in the reasonably foreseeable future because the government can repatriate him to Mexico if his pending bid for judicial relief from his administratively final removal order proves unsuccessful"). Nonetheless, while Petitioner's extended detention pending resolution of his appeal does not entitle him to immediate release under *Zadvydas*, it does weigh the first factor further in Petitioner's favor than when the court addressed his initial motion for a temporary restraining order because Petitioner has now been subjected to extensive detention without an independent trier of fact determining whether that detention is necessary. Further, Petitioner will continue to be subjected to further prolonged detention without such a determination absent court intervention. Thus, the court agrees that Petitioner's year of living at liberty within the United States, and the substantial deprivation of that liberty his current extended detention constitutes, makes the first *Mathews* factor weigh heavily in Petitioner's favor.

Second, the magistrate judge found that the risk of erroneous deprivation also weighed heavily in Petitioner's favor. (Doc. No. 17 at 13–14.) Specifically, the magistrate judge noted that there was a dispute regarding whether Petitioner actually violated the terms of his ISAP, and "a pre-deprivation hearing before a neutral decisionmaker would have significant value" in settling that dispute.[4] (*Id.* at 13.) The magistrate judge further found that there is "significant value to a pre-deprivation hearing in the circumstances of this case, where [P]etitioner has raised legitimate concerns about whether the administrative review process under 8 C.F.R. § 241.4 was fair and meaningful." (*Id.*) The magistrate judge referred to a declaration submitted by Petitioner after the court denied Petitioner's motion for a temporary restraining order in which Petitioner indicates

[4] In Respondents' objections, they object to the magistrate judge's finding as to this dispute because "Petitioner offered no evidence or explanation for his multiple documented violations of the ISAP program other than the vague platitude made by his counsel that he 'complied with the requirements of the ISAP program.'" (Doc. No. 20 at 5 n.3). Respondents further object to the magistrate judge referring to these violations as "technical and not indicative of danger or flight risk" because, Respondents argue, "missed check-ins, biometric or in an office, can be indicative of an alien's risk of nonappearance and potential to fail to comply with attempted removal." (*Id.*) It is not this court's role to opine on the veracity or severity of Petitioner's alleged violations of the ISAP program. Indeed, it is precisely *because* it is not this court's role to make those determinations that the court will order that Petitioner be provided a bond hearing before an immigration judge where these arguments can be properly raised.

that before he was provided his informal interview in compliance with § 241.4 he "was not given time to prepare a defense and did not understand that this was a process to challenge the revocation of [his] freedom." (Doc. No. 16-1 at ¶ 11.) Petitioner further indicates that his informal interview and attendant documents were provided in English, but he "speak[s] Spanish and understand[s] very little English." (*Id.* at ¶ 3.) Thus, the magistrate judge found that the "risk of arbitrary or erroneous deprivation in these circumstances is undeniably stark." (Doc. No. 17 at 14) (quoting *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1034 (N.D. Cal. 2025)).

In their objections, Respondents argue that the magistrate judge's finding is foreclosed by this court's ruling on the motion for a temporary restraining order because the court found that Petitioner's right to due process was satisfied by the procedures provided in 8 C.FR. § 241.4. However, in that ruling the court emphasized that Petitioner had not "allege[d] in the petition that he did not understand the Notice of Revocation of Release due to a language barrier, nor that he does not understand English."[5] (Doc. No. 10 at 9.) Accordingly, upon development of the record, there now exists greater evidentiary support for the court to find that the risk of erroneous deprivation weighs in Petitioner's favor.

Third, the magistrate judge found that "although the government has a strong interest in enforcing immigration regulations, the effort and cost required to provide petitioner with procedural safeguards are minimal." (Doc. No. 17 at 14.) Respondents do not object to this finding. The court finds that the third *Mathews* factor, governmental interest, also weighs in

---

[5] Petitioner further supplemented the record by citing to cases within the Eastern District where the court found that the protections of § 241.4 are insufficient to protect a noncitizen's right to due process. *See, e.g., J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES-SKO, 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) ("[T]he risk of an erroneous deprivation of liberty is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral arbiter."); *Guillermo M.R.*, 791 F. Supp. 3d at 1034 (stating that the procedures in 8 C.F.R. § 241.4 are "essentially no more than a request to ICE's arresting agents or their supervisors at headquarters to reconsider the agency's unilateral detention decision" such that "the lack of any neutral review creates a heightened risk of deprivation for Petitioner."). The court finds this guidance persuasive as to the risk of erroneous deprivation. It does not, however, adopt the determination that § 241.4 is inherently insufficient to protect a noncitizen's right to due process, only that those procedures are insufficient here, where Petitioner has been detained for a prolonged period of time and has not had any actual opportunity to present a defense to his continued detention before a neutral arbiter.

10

Petitioner's favor.

Accordingly, the court will adopt the magistrate judge's finding that Petitioner, given his unique circumstances, is constitutionally entitled to process beyond that provided in 8 C.F.R. § 241.4 and will adopt that portion of the magistrate judge's findings.

### C.    Remedy

The magistrate judge found that Petitioner should have been provided a pre-deprivation bond hearing, that his right to due process was violated upon his detention, and therefore recommended his immediate release. As indicated above, while the court agrees that Petitioner is entitled to process beyond that provided in 8 C.F.R. § 241.4, it does not agree that Petitioner's right to due process was violated at the point of detention. Instead, the court finds that Petitioner's inability to adequately defend himself at his statutorily provided informal interview, together with his prolonged detention, require that Petitioner now be provided a bond hearing at which a neutral arbiter determines whether the alleged violations to his ISAP make Petitioner a flight risk such that the government must detain him pending his appeal to ensure that he will be present at the time of removal. *Zadvydas*, 533 U.S. at 690 (stating that immigration detention is only permissible to ensure the noncitizen's appearance at future immigration proceedings and prevent danger to the community). Because the court finds that Petitioner does not have a statutory right to a pre-deprivation bond hearing under § 1226(a) and did not have a constitutional right to a pre-deprivation bond hearing at the point of his detention, there is no basis to grant Petitioner's immediate release. Instead, the court will order that Petitioner be provided a bond hearing before an immigration judge where the government bears the burden of showing, by clear and convincing evidence, that Petitioner's continued detention is necessary for either community safety or to prevent flight. This is consistent with the court's prior orders finding that, where the government provides a non-pretextual basis for revoking a noncitizen's release, the proper remedy for revocation of that release absent constitutional protections is to provide those constitutional protections, not order immediate release. *See, e.g., Calvillo v. Chestnut*, No. 1:26-cv-00569-DC-CSK, 2026 WL 253627, at *3 (E.D. Cal. Jan. 31, 2026) ("Thus, while the court finds that Petitioner is likely to succeed on the merits of her claim that her re-detention without a

bond hearing violated her right to due process, the court will order that the proper remedy for this violation is that Petitioner receive a post-deprivation bond hearing in which Respondents must show, by clear and convincing evidence, that the alleged changed circumstances demonstrate that Petitioner is either a flight risk or threat to public safety, such that her detention is justified.").

Thus, the court will decline to adopt the magistrate judge's recommendation that Petitioner be ordered immediately released from Respondents' custody.

## CONCLUSION

For the reasons explained above,

1. The magistrate judge's findings and recommendations (Doc. No. 17) are ADOPTED IN PART;

2. Petitioner's petition for writ of habeas corpus (Doc. No. 1) is GRANTED IN PART as follows:

    a. Within fourteen (14) days from the date of entry of this order, Respondents are ORDERED to provide Petitioner J.R.M.J. a bond hearing before an immigration judge at which the government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is either a flight risk or risk to community safety such that Petitioner's continued immigration detention is justified; and

    b. If Respondents fail to provide Petitioner a bond hearing within fourteen (14) days, Petitioner shall be immediately released from Respondents' custody on the same terms as Petitioner's previous release;

3. Petitioner's motion for a temporary restraining order (Doc. No. 23) is DENIED as having been rendered moot by this order;

4. The Clerk of the Court is directed to serve a copy of this order on the Mesa Verde Detention Facility; and

/////

/////

/////

12

5.      The Clerk of the Court is directed to enter judgment for Petitioner and close this case.


IT IS SO ORDERED.

Dated:    **July 2, 2026**

_____
Dena Coggins
United States District Judge

13